## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## HATTIESBURG DIVISION

**MARLOW, LLC**                                                   **PLAINTIFF**

**VERSUS**                           **CIVIL ACTION NO. 2:10cv135KS-MTP**

**BELLSOUTH TELECOMMUNICATIONS, INC.;**
**And BELLSOUTH TELECOMMUNICATIONS, INC.**
**d/b/a AT&T MISSISSIPPI**                            **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion for Summary Judgment **[#97]** filed on behalf of the defendant, BellSouth Telecommunications, Inc., and on a Motion for Permanent Injunction **[#116]** filed on behalf of Marlow, LLC.  The court, having reviewed the motions and supporting briefs, the responses, the pleadings and exhibits on file and being fully advised in the premises finds that the Motion for Summary Judgment **[#97]** filed on behalf of the defendant, BellSouth Telecommunications, Inc. is well taken and should be granted and that the Motion for Permanent Injunction **[#116]** filed on behalf of the plaintiff, Marlow, LLC, is not well taken and should be denied.  The court specifically finds as follows:

### BACKGROUND

BellSouth Telecommunications, Inc. ("BellSouth") is a telephone company licensed to conduct and currently conducting business in the State of Mississippi.  *See Tishomingo R. Co., Inc. v. BellSouth Telecomms., Inc.*, No. 1:06CV343-B-D, 2010 WL

3781977, at *7 (N.D. Miss. Sept. 21, 2010) (BellSouth has the rights granted telegraph and telephone companies pursuant to Chapter 28 of the Mississippi Laws of 1886).  In order to operate its network and provide service to residents of this State, BellSouth asserts that from time to time it must install its lines and fixtures on private property.

In 1996, BellSouth installed one of its fixtures, a 5' high x 4' wide x 1.5' deep cross-connect box (the "1996 Cross-Connect Box"), on a 3.24 acre parcel of land owned by Earl and Helen Burkett situated at or near the intersection of Highway #42 and Springfield Road in Forrest County, Mississippi.  The 1996 Cross-Connect Box is located near the edge of Springfield Road on the northeastern corner of the land.

BellSouth attempted to obtain two separate easements on the aforesaid property in February, 2002.  The first agreement (the "Strip Easement") granted BellSouth "an easement to construct, operate, maintain, and/or remove [its] systems of communications, facilities [and] services" in a strip of land "10 feet by 315 feet long . . . adjoining, and parallel with the edge of the right of way of Springfield [Road]" (the "10' x 315' Parcel").  The second agreement (the "Equipment Easement") granted BellSouth "an easement to construct, operate, maintain, and and/or remove [its] systems of communications, facilities [and] services" on a parcel of land "40 feet by 42 feet" to the "west of, adjoining, and parallel with the edge of the right of way of Springfield [Road]" (the "40' x 42' Parcel").  The Strip Easement and the Equipment Easement (collectively, the "2002 Easements") each also granted BellSouth the right to "clear the easement and keep it cleared of all trees, undergrowth, or other obstructions" and to "[t]rim and cut and keep trimmed and cut all dead, weak, leaning or dangerous trees or limbs outside the easement which might interfere with or fall upon the lines or systems of

communication or power transmission."  BellSouth paid $5,315 for the permanent right to use the 10' x 315' Parcel and the 40' x 42' Parcel (together, the "Parcels") to construct, operate and maintain its telecommunications facilities, as well as the right to keep the two Parcels cleared.

One easement was recorded in the land records of Forrest County, Mississippi, on February 15, 2002, in Book 880, Page 391-392 and a separate easement was recorded in the land records of Forrest County, Mississippi, on February 15, 2002, in Book 880, Pages 393-395.  On March 12, 2002, another easement was filed in the land records of Forrest County, Mississippi, in Book 881, Pages 698-700 apparently to correct the property description set forth on the easement previously recorded on February 15, 2002, in Book 880, Pages 393-395.  All of the easements were signed only by Earl Burkett as grantor.

However, at the time the easements were signed by Earl and filed of record in the land records of Forrest County, Mississippi, Earl was married to Helen L. Burkett and living with her.  Further, at the time that BellSouth secured the easements and more specifically in the calendar year 2002, Helen and Earl were claiming homestead exemption in said property.

In approximately 2002, BellSouth constructed two underground telephone lines in the 10' x 315' Parcel.  No additional lines or fixtures have been installed in the 10' x 315' Parcel since that time.  Between 2002 and 2004, BellSouth constructed two new cabinets and a power pedestal on the 40' x 42' Parcel.  The two cabinets are each 5' high x 4.7' wide x 2' deep.  The only fixture that BellSouth has installed on the 40' x 42' Parcel since 2004 is a pedestal that its contractor placed in January 2011.

Marlow is a Mississippi Limited Liability Company which bought the Burkett's land by Warranty Deed dated December 22, 2006, made subject to any outstanding easements.  On February 16, 2007, Marlow sold an undivided one-half interest in the land to Hilbrooks, LLC.  The warranty deed made the conveyance "subject to any and all easements and rights-of-way, whether of record or of use, . . . including but not limited to that certain Easement to BellSouth Telecommunications file[d] for record in Book 880 at Page 391 and re-recorded in Book 880 at Page 393 and in Book 881 at Page 698, in the office of the Chancery Clerk of Forrest County, Mississippi."  The specifically referenced easements are the 2002 Easements.  Marlow purchased back Hilbrooks' one-half interest in the land in 2009.

In March 2010, Marlow sent a letter to BellSouth asserting that the 2002 easements were void and demanding that BellSouth "immediately remove any personal property currently occupying the easement, return the property to its previous, undamaged state, and cease and desist from any continued use of the easement." Pursuant to a partial summary judgement motion filed on behalf of Marlow, this court ruled that since Helen enjoyed ownership and homestead rights in the subject property, her signature was required on the easements before any valid conveyance could be made to BellSouth.  The court found that any deed and/or conveyance made on homestead property without a spouse joining in the execution of the deed and/or conveyance is absolutely void, and, in this case, passed no title to BellSouth.

BellSouth had attempted to cure this problem by obtaining the signature of Helen on two additional easements in July, 2010.  However, Marlow contends that since the easements are void *ab initio*, any subsequent acts or attempts to cure by obtaining

-4-

execution of the two easements in 2010 from Helen, at a time when she no longer held any interest in the property, were of no consequence, and in fact, constitute a bad faith attempt to cloud the title of Marlow.

BellSouth asserts that the court has already disposed of Marlow's claim for confirmation of title contained in Count One of the Complaint based on the court's prior ruling on the invalidity of the 2002 and 2010 easements and asks for summary judgment on the remaining counts; Count Two - Trespass; Count Three - slander of title; Count Four - injunctive relief; and Count Five - punitive damages.  Marlow has filed a separate motion for permanent injunction, **[Doc. #116]** to require "AT&T to cease its continuing trespass; to immediately remove its personal property and fixtures; to restore Marlow's property to its original condition and to forever enjoin AT&T from utilizing the 10' x 315' easement and the 40' x 42' easement . . .. "  In ruling on BellSouth's summary judgment motion, the court, of necessity, will also dispose of Marlow's motion.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FRCP 56(c); and *see Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T. for State C.*

-5-

*& U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role.  *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material." *Id.*  "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).  In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of

material fact and the appropriateness of judgment as a matter of law to prevail on his motion.  *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues.  *Topalia*n, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]."  *John*, 757 F.2d at 708.  "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion.  *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact."  *In Re Municipal Bond Reporting Antitrust Lit.* , 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## ANALYSIS

BellSouth first contends that it has a constructive license under Mississippi law to use the 10' x 315' Parcel and the 40' x 42' parcel.  To support this argument, BellSouth asserts that Miss. Code Ann. § 77-9-715 the State's public policy that telephone lines and fixtures, once erected, should not then be torn down for lack of license or easement.  Citing portion of the statute, BellSouth argues that this provision allows for the "permanent continuance of such line[s] and fixtures," if the owner is compensated for "damages . . . sustain[ed] by the[ir] erection, continuance, and use."  According to BellSouth, the statute specifically grants a constructive license to the telephone company "as if by leave and license of the owner of the land."

The statute provides in full as follows:

> § 77-9-715. Liability for damages; constructive license
>
> Telegraph and telephone companies or associations shall be responsible for any damages which any person shall sustain by the erection, continuance, and use of telegraph and telephone lines and the fixtures thereof. In any action for the recovery thereof brought by any owner or possessor of land over or along which such line may run, damages shall be assessed for the permanent continuance of such line and fixtures, and on payment thereof the right to continue and

use such line and fixtures shall exist as if by leave and
license of the owner of the land.

Miss. Code Ann. § 77-9-715.

Marlow responds that  § 77-9-715 must not be read in isolation but instead with
the preceding statutes which Marlow asserts make it abundantly clear that the subject
statutes deal with the construction of telegraph and telephone lines on a public
right-of-ways.  Marlow continues that when read in conjunction with one another, Miss.
Code Ann. § 77-9-711, § 77-9-713 and § 77-9-715 clearly set forth the legislative intent
to address the rights and liabilities of a telephone company when erecting lines within
the public rights-of-way of this state and nothing more.  Marlow concludes that in no way
does this statutory law authorize a telephone company to "squat" on a private owner's
land, erect any telephone equipment and fixtures that it deems necessary for the
operation of its business for a profit and upon discovery by the land owner, the
telephone company has the right to permanently utilize the property by virtue of a
constructive license.

The statutes at issue are set forth in full as follows:

### § 77-9-711. Erection of telegraph and telephone lines.

All companies or associations of persons incorporated or organized
for the purpose of constructing telegraph or telephone lines shall be
authorized to construct the same, and to set up and erect their posts
and fixtures along and across any of the public highways, streets, or
waters, and along and across all turnpikes, railroads, and canals,
and also through any of the public lands. Such lines, posts and
fixtures shall be constructed and placed as not to be dangerous to
persons or property, and as not to interfere with the common use of
such roads, streets, or waters, or with the convenience of any
landowner more than may be unavoidable. In case it shall be
necessary to cross any highway, such lines, posts and fixtures shall
be so constructed as to cross such highway at right angles.

Miss. Code Ann. §77-9-711.

This statute is followed by MS Code Ann. §77-9-713 which provides:

> ### § 77-9-713. Local authorities may regulate construction and maintenance of lines.
>
> The board of supervisors of the county, and the governing authorities of any city, town or village, through which any telegraph or telephone lines may pass, shall have power to regulate, within their respective limits, the manner in which the same shall be constructed and maintained, with a view to the safe and convenient use of the public highways and streets. If the proprietors of any telegraph or telephone line refuse or omit to comply with such regulations, the board of supervisors, or the authorities of the city, town or village, may cause such line to be abated within its jurisdiction as a nuisance.

Miss. Code Ann. § 77-9-713.  This section is followed by § 77-9-15 set forth above and argued by BellSouth as the relevant statutory bell-weather for this case.

After reviewing these statutes, Marlow insists that it is clear from the aforesaid statutory scheme that the Mississippi legislature was merely providing the means to allow telephone companies to erect lines in the public right-of-ways of this state, to allow local counties and the governing authorities of any city to regulate telephone companies as to the manner in which the lines may be constructed and maintained and to compensate adjoining or adjacent land owners for the permanent use of such lines and fixtures.

Marlow does not dispute that BellSouth is a telephone company that has "telephone lines and fixtures" that run "over" Marlow's land – specifically, a 10' x 315' strip and a 40' x 42' rectangular area.  Thus, BellSouth retorts that based on the plain language of § 77-9-715, BellSouth has a constructive license to leave its lines and fixtures in place "as if by leave and license," subject only to the payment of damages, if

any.  The court agrees.

Marlow's attempt to limit § 77-9-715 to the construction of telegraph and telephone lines only on public rights-of-way is inconsistent with the plain wording of the statute.  Indeed, there is nothing in the plain, unambiguous language of § 77-9-715 supporting such a limited reading.  Instead, the statute speaks of any land "over or along which" a telegraph or telephone company's "line may run."  The statute also speaks of "any person" who is an "owner or possessor" of land, and is not limited to municipal or other public entities.  The Mississippi Supreme Court has instructed that the clear language of a statute should not be subverted "where the meaning of the statute is clear."  *See Gilmer v. State*, 955 So. 2d 829, 833 (Miss. 2007); *see also Miller v. Meeks*, 762 So. 2d 302, 305 (Miss. 2000) (rejecting argument that term "employee" should be read to exclude physicians, where statute did not "specifically exclude[]" physicians).

The only decision to directly confront the application of the constructive license statute to private property, *In re MCI, Inc.*, No. 02-13533, 2006 WL 538556 (Bkrtcy. S.D.N.Y. Feb. 1, 2006), confirms this court's reading of the statute.  In this particular case, the Plaintiff, McLaughlin was a member in a class action suit previously filed in Mississippi Federal District Court against Mississippi Power Company ("MPC") which related to the installation of fiberoptic cable by MPC on power line easements granted by class action members' predecessor in interest.

MCI had leased spare capacity on MPC's fiberoptic system and was joined as a necessary party.  McLaughlin contended that both MPC and MCI had committed trespass by utilizing the easement for purposes of running fiberoptic cable underneath the class members' land.  McLaughlin requested an injunction against MCI to enjoin

further use of the fiberoptic cable from passing across the class action members' property.  Subsequent to MCI filing for bankruptcy. McLaughlin filed a proof of claim against MCI based upon the claims asserted in the underlying Mississippi district court litigation.   Considering the landowner's claim for an injunction against MCI, the court held that "the remedial imposition of an injunction is foreclosed" by § 77-9-715.  *Id.* at * 5.  This court agrees.

Marlow attempts to distinguish *MCI* on the basis of the validity of the underlying easements.  In *MCI*, there was no question as to the validity of the easements as opposed to this case where the court has ruled the easements of no effect because of the failure to secure the signature of Helen because of her homestead interest.  That argument is irrelevant under the holing of *MCI*.  That court concluded "even if" the landowner had a "valid claim upon which to rest . . . an injunction as a remedy" – such as the landowner's claim that MPC and MCI misused the easement – the "remedial imposition of an injunction" would nonetheless be "foreclosed by" § 77-9-715.  *MCI*, 2006 WL 538556 at *5.[1]  Moreover, as pointed out by BellSouth, the notion that a valid easement is needed to invoke the constructive license statute makes no sense.  If a valid easement existed, a utility would not need to avail itself of the statute.

Equally unavailing is Marlow's reliance on *Clay v. Postal Tel. Co.*, 11 So. 658

---

[1] The only court in Mississippi to be confronted with a claim that the constructive license statute applies to private property recognized that such a claim is cognizable, but did not reach its merits. In *Presley v. South Cent. Bell Telephone Co.*, 684 F. Supp. 1397 (S.D. Miss. 1988), the court rejected a landowner's malicious prosecution claim against a telephone company, where, in an earlier suit that settled, the telephone company had asserted, among other things, that it had a lawful right to maintain its lines on the landowner's private property based on the constructive license statute (then codified at Miss. Code Ann. § 77-9-713). *Presley*, 684 F. Supp. at 1399-1400. The court held that the claim was "arguably cognizable based on applicable legal principles" and "not unreasonably asserted," but found it unnecessary to resolve whether the claim was "legally correct and of unquestionable validity." *Id.* at 1401.

(Miss. 1892).  In *Clay*, a telegraph company, while installing lines along a public right-of-way, cut and damaged trees on a neighbor's property.  The court in *Clay* ordered the telegraph company to pay damages to the neighbor, finding that the local government could not authorize the telegraph company to cut trees on private property. 11 So. at 659.   *Clay* did not even suggest that § 77-9-715 is inapplicable where the telegraph lines run over private property.

Marlow's final assertion in regard to BellSouth's constructive license argument is that it would somehow violate the Statute of Frauds.  However, the statute of frauds governs contracts.  Miss. Code Ann. § 15-3-1 ("Writing required for certain contracts"). BellSouth's constructive license is derived from a statute, specifically § 77- 9-715 of the Mississippi Code.  BellSouth's rights do not come from a contract subject to the statute of frauds but, instead, arise by operation of law.  *See Neyland v. Neyland*, 482 So.2d 228, 230 (Miss. 1986) ("statute of frauds has no application to a constructive trust or equitable lien which arises by operation of law").

The court thus concludes, just as the court did in *MCI*, that Marlow's claim for an injunction is foreclosed by the constructive license statute.  Pursuant to the statute, BellSouth has a "right to continue and use such line and fixtures" permanently on the 10' x 315' Parcel and the 40' x 42' Parcel "as if by leave and license of" Marlow, barring Marlow's claim for injunctive relief (Count Four).

Finding that Marlow is not entitled to an injunction, the only issue remaining under the constructive license statute is whether, and to what extent, Marlow might be entitled to damages under the statute as a result of BellSouth's deployment and maintenance of its lines and fixtures on the 10' x 315' Parcel and the 40' x 42' Parcel.  BellSouth argues

-13-

that Marlow is not entitled to any damages for trespass because BellSouth already paid any compensation required by the statute.

There is no dispute that BellSouth paid $5,315 in compensation to the Burketts for the permanent right to use the two Parcels and keep them cleared.  Specifically, BellSouth made these payments in exchange for the right to "construct, operate, maintain, and and/or remove [its] systems of communications, facilities [and] services" in the two Parcels.  BellSouth also paid for the right to "clear the [Parcels] and keep [them] cleared of all trees, undergrowth, or other obstructions" and the right to "[t]rim and cut and keep trimmed and cut all dead, weak, leaning or dangerous trees or limbs outside the [Parcels] which might interfere with or fall upon the lines or systems of communication or power transmission."  Thus, BellSouth contends that the rights it paid for in 2002 are the same rights for which any damages would be due under the constructive license statute.

BellSouth's contention on this issue dovetails with its subsequent argument that the prior trespass doctrine bars Marlow's claims for an injunction and/or damages.  It has long been settled in Mississippi that "[a] purchaser of land after a trespass cannot recover for the trespass." *Masonite Corp. v. Burnham*, 146 So. 292, 294 (Miss. 1933) (overruled on other grounds).[2]  This results because the deed conveying land to the new owner "does not implicitly convey any right of action for trespasses or property damage that occurred prior to the transaction."  *Patterson v. Holleman*, 917 So. 2d 125, 137 (Miss. App. 2005).  *See also Henritzy v. Harrison County*, 178 So. 322, 326 (Miss. 1938)

---

[2]  In *Flight Line, Inc. v. Tanksley*, 608 So. 2d 1149, 1156-57 (Miss. 1992), the court overruled *Masonite's* holding regarding where injuries "occur or accrue" for purposes of determining venue.

("The purchaser of land takes it without any right of action for former trespasses.").

Marlow could have received an assignment of claim from the Burketts, however, there is no dispute that it did not. In order for a trespass claim to be assigned to a subsequent purchaser of land, the claim must "be explicitly assigned by the seller of land." *Patterson*, 917 So. 2d at 137. Marlow never received such an assignment from the Burketts, either pursuant to deed or by separate agreement.

In response, Marlow asserts that neither *Masonite* nor *Henritzy* dealt with a request for injunctive relief. Marlow points out that it has never sought any damages for any trespass prior to its ownership of the property in 2006. Marlow goes on to argue that the proper application of the prior trespass doctrine has been reviewed by the Fifth Circuit in *City of Jackson v. Filtrol Corp.*, 624 F.2d 1384 (5th Cir. 1980). The Fifth Circuit stated that "Mississippi law allows a Plaintiff damaged by the physical invasion to its land to recover upon a simple showing that the Defendant was responsible, whether it be labeled nuisance or trespass or strict liability." *Id.* at 1389. In examining the rationale for the prior trespass doctrine, the Fifth Circuit went on to state:

> The rationale for the prior trespass doctrine is that a purchaser of land to which permanent damage has been done by trespass or nuisance pays less for the land because of that damage. The purchaser therefore cannot recover for the dimunition in the value of the property caused by the nuisance or trespass.

*Filtrol*, 624 F.2d at 1391.

Marlow seems to accept the proposition that permanent damage caused by a prior trespass is not recoverable absent an assignment of such claim from the prior owner. However, Marlow goes on to argue that it is entitled to special damages from the

continuing trespass not reflected in the price it paid for the property citing *Donald v. Amoco Production Co.*, 735 So.2d 161 (Miss. 1991).  In *Donald*, the Mississippi Supreme Court, citing *Filtrol*, refused to apply the prior trespass doctrine to any damages that could be proven after the purchase of the property.  *Id.* at 170.

Regarding permanent damages, Marlow insists that there has been no proof whatsoever in the record before this court that Marlow paid any decreased price for the property.  However, it is undisputed that Marlow had a title search of the property performed prior to its purchase; that the invalid BellSouth easements were recorded; and that Marlow had a survey of the property showing the easements.  It is also undisputed that Marlow sold a one-half interest in the property subject to the specific BellSouth easements and repurchased it subject to those same specific easements.  It would be entirely disingenuous to argue that Marlow did not have at least constructive notice and probably actual notice of the purported easements.

Fortunately, Marlow does not make such a disingenuous argument.  Instead, it argues that it paid the Burketts their "asking price" for the property, tacitly suggesting to the court that such "asking price" did not reflect any diminution in the value of the property resulting from the easements.  In this day and time of sophisticated real estate purchasers and investors, it is beyond disingenuous to even suggest that Marlow was not aware of the BellSouth easements and that such was not factored into the purchasing decision by Marlow.  Indeed, the prior trespass doctrine is based on the principle that landowners who buy land on which a trespass already exists have "purchased the land as they found it, whether they knew of its depreciated value or not." *Masonite*, 146 So. at 294.  However, whether Marlow factored the easements into its

purchase decision or not is of no moment as the court concludes that Marlow's claims fail regardless.

Marlow argues that the BellSouth lines and equipment on the property are not permanent within the meaning of *Filtrol* because they can be removed.  Thus, Marlow contends that BellSouth's alleged trespass is merely "continuing," and that continuing trespasses have always be subject to injunctive relief in Mississippi.  Marlow's feeble argument that the BellSouth lines and equipment installed on the property must be of some permanent nature as opposed to some continuing nature mystifies the court.  All of the continuing trespass cases cited by Marlow and reviewed by this court relate to situations in which some agent continues to damage property in repeated exposures to the agent, such as in toxic tort contamination cases.  That is not the situation here.

The damage was done when the equipment and lines were installed.  Under a takings analysis, a property is diminished in value when the taking occurs.  The correct measure of damages in such a situation is the value of the property before the taking and immediately after the taking.  What Marlow seems to be advocating, at its most extreme, is for a reevaluation of the measure of damages each time a property is sold where the easement can be called into question.  The court concludes that this is not a proper application of the prior trespass doctrine.

The court has held that BellSouth has a constructive license on the aforementioned parcels.  Its equipment and lines are properly there and may be utilized, maintained, upgraded, replaced or removed by BellSouth in conformity with that license. Marlow is not entitled to an injunction to have BellSouth's equipment or lines removed and is not entitled to damages under any permanent or continuing trespass theory.

BellSouth has a permanent right to use the two Parcels for the deployment of its telecommunications facilities, thus BellSouth is also entitled to summary judgment on the remainder of Marlow's confirmation of title claim (Count One).

Finally, BellSouth argues that it is entitled to summary judgment on Marlow's claims for slander of title and punitive damages because there is no evidence of malice and because BellSouth relied in good faith on the advice of counsel.  As stated above, BellSouth secured the signature of Helen Burkett on additional easements in July 2010 in an apparent attempt to memorialize her intentions regarding the 2002 easements.  Marlow has attacked this as a slander on its title and bad faith.  Of course, the court previously held those 2010 easements equally as invalid as that 2002 easements but has now concluded that BellSouth has a constructive license by operation of statute.

Marlow argues that there are genuine issues of material fact as to whether the conduct of BellSouth in securing the 2010 easements was malicious and accordingly, this issue should be submitted to the jury.  Marlow expends much energy and ink trying to convince the court of the evil motives of BellSouth in securing Helen's signature.  What Marlow fails to address, is that Helen undeniably assented to the granting of the easements and is support for BellSouth's contention that the failure to secure her signature in 2002 on the original easements was a mere oversight.  Indeed, Marlow's actions reek of an unvarnished attempt to capture a windfall by holding BellSouth hostage to an inadvertent mistake, the significance of which did not even dawn on Marlow until nearly four years after its initial purchase of the property and a sale and repurchase of a one-half interest.

Malice is "an essential ingredient of a cause of action for slander of title." *Perrien*

-18-

*v. Mapp*, 374 So. 2d 794, 798 (Miss. 1979) (overruled on other grounds).  There is absolutely no evidence from which to infer that BellSouth acted with malice in obtaining the 2010 Easements, rather than in good faith and in reliance on the advice of counsel. Therefore, Marlow's claims for slander of title (Count Three) and punitive damages (Count Five) must fail.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment **[#97]** filed on behalf of the defendant, BellSouth Telecommunications, Inc. is granted and the complaint filed on behalf of Marlow, LLC is dismissed with prejudice and that the Motion for Permanent Injunction **[#116]** filed on behalf of Marlow, LLC is denied. A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED AND ADJUDGED that this Opinion and Judgment be recorded in the land records of Forrest County, Mississippi, as a muniment of title.

SO ORDERED AND ADJUDGED this 18th day of May, 2011.


*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE